UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAYLA MALL,

                    Plaintiff,                                Civil Action No.
                                                             06-CV-12332

vs.
                                                             HON. BERNARD A. FRIEDMAN

HONDA NORTH AMERICA, INC.,
et al.,

                    Defendants.

_____/


**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AS MOOT AND GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

                    This matter is presently before the Court on Defendant's Motion for Partial Summary

Judgment [docket entry 34] and Defendant's Motion for Summary Judgment [docket entry 35].

Plaintiff has filed a separate response to both motions, and Defendant has filed replies.  The Court

has had an opportunity to thoroughly examine the pleadings, documents, and evidence submitted

by the parties in this matter, and pursuant to E.D. Mich. LR 7.1(e)(2), the Court will decide this

matter without oral argument.  For the reasons stated below, the Court will deny Defendant's Motion

for Partial Summary Judgment as moot and grant Defendant's Motion for Summary Judgment.

I.      **FACTUAL BACKGROUND**

                    On the evening of April 20, 2003, Kayla Mall ("Plaintiff") and Daniel Katz ("Katz")

were at Plaintiff's home when they decided to go out for pizza.  (Def.'s Mot. for Summ. J. at ex. 2,

¶ 1.)  The two left Plaintiff's house in a 2002 Honda Accord.  (Pl.'s Compl. at ¶ 6.)  Plaintiff was

sitting in the passenger seat of the car and Katz was driving. (*Id.*; Pl.'s Answer to Def.'s First Req. for Admis. at nos. 1, 3.) At about 9:15 PM, Katz's vehicle entered the intersection of Maple Road and Beverly Crest Drive in West Bloomfield, Michigan. (Pl.'s Compl. at ¶ 6.) As Katz was attempting to make a left-hand turn onto westbound Maple Road, his car was struck by another vehicle. (*Id.*) The collision caused the driver's side air bag to deploy upon impact (*Id.* at ¶ 7.) However, Katz observed that the passenger side air bag had not yet deployed at this point in time. (*Id.* at ¶ 9.)

Plaintiff states that the collision caused her head to hit the dashboard of the car, and possibly the gearshift. (*Id.* at ¶ 8.) As a result, Plaintiff suffered severe lacerations to her face and forehead. (*Id.*) According to Plaintiff's Complaint, shortly after impact, Katz exited the car and went around to the passenger side of the vehicle to aid Plaintiff, who was unconscious in the passenger seat, with her lap and shoulder belt in place. (*Id.* at ¶¶ 8-9; Pl.'s Answer to Def.'s First Req. for Admis. at no. 4). On the other hand, Defendants assert that the shoulder belt portion of Plaintiff's seat belt was not properly routed across Plaintiff's shoulder. (Def.'s Mot. for Summ. J. at ex. 9.) While Katz was positioned in between the air bag storage area and Plaintiff, the air bag allegedly deployed. (Pl.'s Compl. at ¶ 9.) Therefore, Plaintiff states that, according to Katz, the passenger side air bag did not deploy in a timely manner, given that Katz had time to exit the car, walk around to the passenger side of the vehicle, and begin rendering first aid upon Plaintiff, all before the air bag deployed. (*Id.* at ¶ 15.)

Plaintiff claims that Defendants had actual knowledge of a defect in the supplement restraint system ("SRS") units placed in 2002 Honda Accords, and did little or nothing to investigate or warn vehicle owners of the defect. (*Id.* at ¶ 17.) Plaintiff also alleges that Defendants were

negligent for manufacturing and installing a defective SRS unit in Katz's vehicle. (*Id*. at ¶ 16.) As a direct and proximate result of the late deployment of the passenger side air bag, Plaintiff alleges that she suffered a severe closed-head injury, severe lacerations of her face and forehead, disability, lost educational opportunities, lost employment opportunities, and serious disfigurement. (*Id*. at ¶ 20.) Plaintiff also states that the residuals from the lacerations and closed-head injury are permanent (*Id*.)

II.     **PROCEDURAL HISTORY**

On April 28, 2006, Plaintiff filed a complaint in the Circuit Court of Michigan, Oakland County, against Honda North American, Inc. and American Honda Motor Co., Inc. On May 23, 2006, Defendants filed a Notice of Removal based on diversity jurisdiction.[1] On May 31, 2006, both Honda North American, Inc. and American Honda Motor Co., Inc. filed their respective answers. On August 15, 2006, the Court issued an order dismissing the complaint with prejudice as to Defendant Honda North America, Inc., leaving American Honda Motor Co., Inc. as the sole remaining defendant.[2] Defendant filed a Motion for Partial Summary Judgment and a Motion for Summary Judgment on May 1, 2007. On May 22, 2007, Plaintiff filed a separate response to both, and Defendant filed its replies on June 1, 2007.

III.    **STANDARD OF REVIEW**

---

[1] Plaintiff is a Michigan citizen and Defendants Honda North American, Inc. and American Honda Motor Co. Inc. were both incorporated in California, with their principle places of business in California, as well.

[2] Therefore, all subsequent references to "Defendant" pertain to Defendant American Honda Motor Co. Inc., only.

According to Fed. R. Civ. P. 56(c),[3] summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." According to the United States Supreme Court, there are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In addition, the Supreme Court has held:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Thus, "[t]he moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).

Once the moving party discharges this burden, the burden then shifts to the nonmoving party. *See id.* "[T]he nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Id.* (citing Fed. R. Civ. P.

---

[3] A federal court sitting in diversity applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); 28 U.S.C. § 1652. Thus, while Fed. R. Civ. P. 56 controls the determination of Defendant's Motion for Partial Summary Judgment and Motion for Summary Judgment, Michigan law controls the determination of Plaintiff's tort claims. *See, e.g., Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 459 (6th Cir. 1986).

4

56(e); *Celotex Corp.*, 477 U.S. at 324).  Indeed, the nonmoving party "must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment." *Id.*  "When reviewing a motion for summary judgment, [the court] must draw all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

V.     **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FED. R. CIV. P. 8(f) states, "all pleadings shall be so construed as to do substantial justice."  According to Wright and Miller,

> [o]ne of the most important objectives of the federal rules is that lawsuits should be determined on their merits and according to the dictates of justice, rather than in terms of whether or not the averments in the paper pleadings have been artfully or inartfully drawn.

5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004).  Moreover, "the district court is obligated to make a determined effort to understand what the pleader is attempting to set forth and to construe the pleading in his or her favor, whenever the interest of justice so requires." *Id.*  In this spirit, the Sixth Circuit has held,

> the [Federal] Rules [of Civil Procedure] require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint.  Indeed, this court has made clear that 'the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states.'

*Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (quoting *United States v. Louisville & Nashville R. Co.*, 221 F.2d 698, 701 (6th Cir. 1955)).

Plaintiff, in her Complaint, makes three principle allegations against Defendant.  First, Plaintiff states that "Defendant[] had actual knowledge of a defect in the SRS units placed in

2002 Accords prior to April, 2003, and . . . did little or nothing to investigate the defect or warn the vehicle owners." (Pl.'s Compl. at ¶ 17.) Second, Plaintiff alleges, "Defendant[] had a duty to manufacture, test and install SRS units that would deploy immediately upon a significant front end impact. They breached this duty when defective units were actually placed in the subject vehicle, which did not fully function as designed." (*Id*. at ¶ 18.) Third, Plaintiff alleges that, "Defendant[] [was] negligent for manufacturing and installing a defective SRS unit in the subject vehicle . . . that did not deploy in a timely manner. (*Id*. at ¶ 16.)

Clearly, Plaintiff has expressly asserted a claim for a manufacturing defect. *See* Compl. at ¶ 16. Moreover, Plaintiff has expressly stated that she is not alleging a design defect. *See* Pl.'s Answer to Def.'s First Req. for Admis. at no. 6 ("Plaintiff . . . is not claiming a design defect"). After a thorough examination of the pleadings, and in light of the duty imposed upon this Court by Rule 8(f) to "probe deeper and examine the substance of the complaint," the Court finds that Plaintiff's Complaint implicitly alleges a breach of implied warranty, and will so construe the pleadings as if they expressly contained this allegation. *See Minger*, 239 F.3d at 799.

The Michigan legislature has defined *product liability action* as "an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product." MICH COMP. LAWS § 600.2945(h). In turn, *product* is defined as "any and all component parts to a product." *Id*. at § 600.2945(g). As such, an air bag would fall under the statutory definition of *product*, and therefore would fall within the scope of a product liability action under Michigan law.

"Traditional principles of products liability law recognize three types of defects: manufacturing defects, defects due to faulty design, and defects due to inadequate instructions or

warnings." *Fleck v. Titan Tire Corp.*, 177 F. Supp.2d 605, 613 (E.D. Mich. 2001) (citing RESTATEMENT (THIRD) OF TORTS § 2 (1998)). "To provide compensation for injuries caused by such defects, Michigan recognizes two distinct causes of action for product failures: negligence and implied warranty." *Id.* (citing *Gregory v. Cincinnati, Inc.*, 538 N.W.2d 325, 329 (Mich. 1995); *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 736-737 (6th Cir. 2000)). The Michigan Supreme Court has recognized "that the negligence theory generally focuses on the defendant's conduct, requiring a showing that it was unreasonable." *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 186 (Mich. 1985). Conversely, the implied warranty cause of action "generally focuses upon the fitness of the product, irrespective of the defendant's conduct. *Id.* Thus, "[i]n a claim of breach of implied warranty, the product's lack of fitness for its intended use amounts to an actionable defect." *Kenkel v. Stanley Works*, 665 N.W.2d 490, 497 (Mich. Ct. App. 2003) (footnote and citation omitted). As discussed above, in this case Plaintiff argues that the alleged late deployment of the passenger side air bag constitutes a manufacturing defect under a negligence theory and also a breach of implied warranty.

"A manufacturing defect is a departure from a product unit's design specifications." RESTATEMENT (THIRD) OF TORTS § 2 (1998). Thus, in the case of a manufacturing defect, the product causing injury "differs from comparable products typically produced by the manufacturer." *Fleck*, 177 F. Supp.2d at 614. A breach of implied warranty claim, on the other hand, focuses on the condition of the product only, and "[c]ustomarily, [a] defect can be found 'regardless of the amount of care utilized by the manufacturer.'" *Gregory*, 538 N.W.2d at 329 (quoting *Smith v. E.R. Squib & Sons, Inc.*, 273 N.W.2d 476, 480 (Mich. 1979)). Therefore, "[i]mplied warranty imposes strict liability on the manufacturer and vendors of a product." *Fleck*, 177 F. Supp.2d at 621 (citing

*Cook v. Darling*, 125 N.W. 411, 413 (Mich. 1910); *Dooms v. Stewart Bolling & Co.*, 241 N.W.2d 738, 743 (Mich. Ct. App. 1976)).

According to Michigan statutory law, "[i]n a product liability action brought against a manufacturer or seller for harm allegedly caused by a production defect, the manufacturer or seller is not liable unless the plaintiff establishes that the product was not reasonably safe at the time the specific unit of the product left the control of the manufacturer or seller . . . ." MICH COMP. LAWS § 600.2946. Therefore, "in order to establish a [p]rima facie case of negligence or breach of implied warranty in products liability cases, plaintiffs who seek to avoid a directed verdict 'must prove a defect attributable to the manufacturer (or seller), and causal connection between that defect and the injury or damage of which he complains.'" *Kupkowski v. Avis Ford, Inc.*, 235 N.W.2d 324, 327-328 (Mich. 1975) (quoting *Caldwell v. Fox*, 231 N.W.2d 46, 50 (Mich. 1975)). Therefore, the Michigan Supreme Court has made clear that whether a plaintiff is proceeding under a negligence theory or a breach of implied warranty theory, the plaintiff must prove (1) that the product was defective; (2) that the product was defective when it left the control of the defendant; and (3) that the defective product caused the plaintiff's injuries. Because the Court finds that Plaintiff has not met her burden on elements (2) and (3), Defendant's Motion for Summary Judgment must be granted. Each element will be examined, in turn, below.

A.     *Was the Air Bag Defective?*

In *Prentis*, the Michigan Supreme Court elaborated on the meaning of the word *defective* in the products liability context:

> [l]ike the courts in every other state, whether a suit is based upon negligence or implied warranty, we require the plaintiff to prove that the product itself is actionable-that something is wrong with it that makes it dangerous. This idea of 'something wrong' is usually expressed by the adjective 'defective'

. . . . As a term of art, 'defective' gives little difficulty when something goes wrong in the manufacturing process and the product is not in its intended condition.

365 N.W.2d at 181-182. Michigan courts have also made clear that, "it is the injury inflicted on the plaintiff that entitles him to a remedy, not his skill in discovering precisely where defendant's manufacturing process went wrong." *Holloway v. General Motors Corp.*, 271 N.W.2d 777, 783 (Mich. 1978). Thus, the *Holloway* Court concluded that a person injured by a product need not identify the specific defect. *See id.* Indeed, "'[a] demonstrable malfunction is generally clear evidence of a defect . . . .'" *Kenkel*, 665 N.W.2d at 497 (quoting *Snider v. Bob Thibodeau Ford, Inc.*, 202 N.W.2d 727, 730 (Mich. Ct. App. 1972)).

An issue has arisen in this case as to whether expert testimony is necessary in order to prove a manufacturing defect. Because Plaintiff has no expert, this issue is important. As Defendant has pointed out in its brief, courts in the Eastern and Western districts of Michigan have held on at least three occasions that a manufacturing defect must be established by expert testimony. *See Moisenko v. Volkswagenwerk Aktiengesellschaft*, 100 F. Supp.2d 489, 493 (W.D. Mich. 2000) (stating, "[a]s to a manufacturing defect claim, it is well-settled that such a claim cannot be proven without expert testimony"); *Leyva v. Ford Motor Corp.*, No. 04-60068 (E.D. Mich. July 21, 2005) (relying on the above-quoted statement by the *Moisenko* court)*; Winter v. Louisville Ladder Group Int'l, LLC*, 2006 WL 3497319 (E.D. Mich. Dec. 1, 2006) (same). Based on these three cases, Defendant argues that Plaintiff's manufacturing defect claim must fail because "Plaintiff has no expert witness to testify to any alleged manufacturing defect." (Def.'s Mot. for Summ. J. at 5.) Although Defendant is correct that Plaintiff has no expert witnesses to testify to any alleged manufacturing defect, the Court finds that, notwithstanding *Moisenko*, *Leyva*, and *Winter*, Michigan

law does not require the testimony of an expert witness in order to prove a manufacturing defect.

The *Leyva* and *Winter* courts both relied on the *Moisenko* court's statement that "[a]s to a manufacturing defect claim, it is well-settled that such a claim cannot be proven without expert testimony." *See Moisenko*, 100 F. Supp.2d at 493. The *Moisenko* court provides no citation for this proposition, and the *Leyva* and *Winter* courts provide no additional authority for their reliance on this statement. This Court has had an opportunity to extensively review Michigan case law on the subject and finds that, under Michigan law, expert testimony is *not* needed to prove a manufacturing defect. Three cases in particular lead the Court to reach this conclusion. First, the Michigan Supreme Court in *Holloway* expressly stated,

> [the plaintiffs] were at liberty to establish that there was a reasonable probability of a manufacturing defect . . . by direct *or* circumstantial evidence. A manufacturing defect can be proved by circumstantial evidence without expert opinion testimony.

271 N.W.2d at 784 (footnote omitted) (emphasis in original). The parties have not supplied the Court with a Michigan Supreme Court case or Michigan Court of Appeals case that would tend to undercut *Holloway*; and indeed, the Court can find no such case. In fact, Michigan courts have reaffirmed this holding on several occasions.

In *Caldwell*, the original defendant brought a third-party complaint, alleging negligence and breach of implied warranty, against the manufacturer and seller of his car after the breaks suddenly failed, causing his car to collide with the car being driven by the original plaintiff. 231 N.W.2d at 48-49. In reversing the trial court's grant of a directed verdict in favor of the manufacturer and seller on the negligence and implied warranty claims, the Michigan Supreme Court held that, "[i]t is within the province of the jury to infer the existence of a defective condition from circumstantial evidence *alone*; there is no requirement that the actual defect need be proven."

*Id.* at 51 (emphasis added) (citing *Snider*, 202 N.W.2d). This language, like the language in *Holloway*, clearly indicates that expert testimony is not necessary to establish a defect.

Finally, the third case supporting the proposition that expert testimony is not needed to prove a manufacturing defect is *McBride v. Chrysler Corp.*, 2002 WL 99704 (Mich. Ct. App. Jan. 22, 2002). In *McBride*, the Michigan Court of Appeals strongly implied, in *dicta*, that expert testimony is not required to prove a manufacturing defect. *Id.* at *2. The plaintiff in *McBride* claimed that a manufacturing defect in the steering knuckle of his car caused it to suddenly veer off the roadway, resulting in injuries to the plaintiff. *Id.* at *1. In reversing the trial court's grant of summary disposition, the court stated that, although the plaintiff did have an expert witness who asserted that there was a manufacturing defect and that it existed at the time of manufacture,

> [f]or the purposes of our discussion related to the summary disposition issue, regardless of whether we consider [the expert's] ultimate opinion, given at his trial deposition, that there was a manufacturing defect, and that the defect existed at the time of manufacture, there would be sufficient evidence to support reversal. *[The expert's] opinion on those matters is not necessary to support our decision*.

*Id.* at *2 n.3 (emphasis added). The *McBride* court found the following evidence sufficient to support its decision to reverse the trial court: (1) plaintiff's evidence that the road was dry and that eyewitnesses saw the vehicle driver lose control for no apparent reason; (2) plaintiff's observation that there was a "crash" at the right front wheel before the car went off the road; (3) plaintiff's evidence that the steering knuckle had fractured; (4) plaintiff's expert's testimony that the fracture of the steering knuckle, and not the impact of the crash, caused the car to crash; and (5) plaintiff's expert's testimony that the steering knuckle was inaccessible to the user and was expected to last for the lifetime of the car. *Id* at *2. Thus, it should be emphasized that the *McBride* court did rely on the testimony of plaintiff's expert with respect to whether the defect caused the crash, and

regarding the inaccessibility of the steering knuckle to the user, but it did not rely on the expert's testimony with respect to the existence of a manufacturing defect. *See id.* at *2 n.3-4. In fact, the *McBride* court went out of its way to note that it was not relying on the plaintiff's expert in its finding that there was sufficient evidence of a manufacturing defect to defeat the defendant's motion for summary disposition. *See id.* at *2 n.3.

The *McBride* court proceeded to reiterate the Michigan Supreme Court's holding in *Holloway*: "plaintiff is allowed to establish his case that the knuckle was defective by circumstantial evidence, and plaintiff is not required to specify the exact cause of the defect in order to succeed in his cause of action." *Id.* at *2 n.4. In light of the fact that Michigan courts continue to apply *Holloway*, this Court must conclude that, notwithstanding other decisions by courts applying Michigan law in the Eastern and Western districts of Michigan, expert testimony is not needed to establish a manufacturing defect, at least when circumstantial evidence is sufficient to create a genuine issue of material fact as to the existence of such a defect.

Therefore, in this case, the mere fact that Plaintiff has not posited expert testimony in support of her manufacturing defect claim does not render her claim susceptible to summary judgment if Plaintiff has demonstrated via circumstantial evidence a genuine issue of material fact as to whether such a defect existed. Plaintiff argues that, although she has no expert of her own, Defendant's "own response to proffered interrogatories provides the necessary expert testimony necessary to prove the manufacturing defect, when combined with the testimony of Daniel Katz." (Pl.'s Response to Def.'s Mot. for Summ. J. at 7.) Specifically, Plaintiff contends that, since Defendant has stated in response to an interrogatory that the passenger side air bag was designed to deploy at the same time as the driver's side air bag and Katz has stated that the air bag did not so

deploy, this combination of evidence provides, "the necessary 'expert' testimony to satisfy any common law requirement." (*Id*. at 7-8.)

The Court has examined Defendant's responses to Plaintiff's interrogatories, and is unable to locate the response in which Defendant purportedly admits that the driver and passenger side air bags were designed to deploy at the same time. Not surprisingly, Plaintiff does not give a citation for this alleged statement, and Defendant, in its reply brief, denies making it. (*See* Def.'s Reply at 4.) Therefore, Plaintiff's argument that the above-referenced combination of evidence demonstrates a manufacturing defect is not supported by the evidence and must be rejected.

Nonetheless, on these facts, viewing the circumstantial evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has met her burden of establishing a defect in the air bag for the purposes of her negligence and breach of implied warranty claims because Plaintiff's evidence is sufficient to create a genuine issue of material fact. Plaintiff has consistently and repeatedly stated that, according to Katz: (1) his air bag deployed upon impact, (2) he noticed that the passenger side air bag did not deploy upon impact, and (3) he felt the sound and sensation of the passenger side air bag deploying while attending to Plaintiff's injuries seconds or minutes after impact. If the jury believes this testimony, no expert is needed to inform the jury that the air bag was unfit for its ordinary use. Indeed, Katz's testimony, if believed, would be sufficient for a jury to conclude that something went wrong with the deployment of the air bag consistent with the existence of a defect. In other words, this evidence tends to show a "'demonstrable malfunction,'" which is "'generally clear evidence of a defect'" under Michigan law. *See Kenkel*, 665 N.W.2d at 497 (quoting *Snider*, 202 N.W.2d at 730). Although it is true that Defendant's experts, most notably Mr. Klima and Ms. Christopherson, have opined that there is no physical evidence that the passenger

side air bag failed to deploy properly during the accident, *see* Def.'s Mot. for Summ. J. at ex. 9-10, it is "for the jury to weigh the evidence and resolve these contradictions." *See Caldwell*, 231 N.W.2d at 51.

B.     *Was the Air Bag Defective When It Left Defendant's Control?*

"Both circumstantial evidence and direct evidence may be used to demonstrate that the defect existed when the product left the defendant's control." *Kenkel*, 665 N.W.2d at 498 (citing *Masb-Seg Property/Casualty Pool, Inc. v. Metalux*, 586 N.W.2d 549 (Mich. Ct. App. 1998)).  The *Holloway* court shed some light on how a product liability plaintiff might demonstrate that the product was defective when it left the manufacturer's or seller's control in the absence of direct evidence:

> [w]here a failure is caused by a defect in a relatively inaccessible part integral to the structure of the automobile not generally required to be repaired, replaced, or maintained, it may be reasonable, absent misuse, to infer that the defect is attributable to the manufacturer.

271 N.W.2d at 782.  For example, in *Hastings Mutual Ins. Co. v. General Motors Corp.*, 2005 WL 711767, at *1 (Mich. Ct. App. Mar. 29, 2005), the plaintiff asserted a manufacturing defect claim, alleging that a faulty valve cover gasket caused a fire that destroyed the plaintiff's vehicle.  Because the plaintiff did not have direct evidence of a manufacturing defect, he sought to establish an inference of a defect from circumstantial evidence in order to proceed to the trier of fact.  *Id*. at *2. In affirming the trial court's decision to grant summary disposition in favor of the defendant, the appellate court noted that the plaintiff "presented no evidence whatsoever that the valve cover gasket was a part that was integral to the structure of the truck or that it was not a part that was generally required to be repaired, replaced or maintained." *Id*.

The *Kenkel* court also examined this issue.  In that case, the automated sliding glass

doors at the entrance of a drug store closed on the plaintiff, a customer at the store, trapping her sideways in a standing position. 665 N.W.2d at 493-494. The customer brought negligence and breach of implied warranty claims against the manufacturer of the sliding doors. *Id*. at 494. In finding that the plaintiff submitted sufficient evidence that the alleged defect existed when the doors left the manufacturer's control, the court noted that the evidence established that no one had altered the door system after the manufacturer installed it, and that the electrical components of the sensor systems were contained in closed compartments. *Id*. at 498.

In this case, Plaintiff seems to argue, only in passing, that the alleged defect in the air bag existed when the car left Defendant's control. Indeed, Plaintiff's coverage of this issue in her brief is extremely limited:

> Daniel Katz has testified that the car had been purchased recently and that he had experienced no problems with the vehicle before April 30, 2003. In addition, he testified that the vehicle had undergone only routine maintenance through the dealership.

(Pl.'s Response to Def.'s Mot. for Summ. J. at 7.) Plaintiff failed to attach a transcript of this testimony to her Response brief, and the Court is unable to locate the testimony in any of the documents submitted to the Court.

The Court finds that Plaintiff has failed to offer evidence that any defect in the air bag existed at the time the car left Defendant's control. First, Plaintiff has offered no direct evidence that a defect in the air bag existed when the car left Defendant's control. Second, Plaintiff has failed to come forward with sufficient circumstantial evidence that would allow a jury to infer the existence of a defect when the car left Defendant's control. Like the plaintiff in *Hastings Mutual Ins. Co.* who failed to present evidence that the valve cover gasket was integral to the structure of the vehicle or that it was not a part that was generally required to be repaired, replaced, or

maintained, Plaintiff here likewise has failed to do the same with respect to the allegedly defective air bag. *See id.* Thus, the Court is unable to apply the inference approach authorized by the *Holloway* Court in this case, given that Plaintiff has failed to offer any evidence in support of its application.

Moreover, unlike the plaintiff in *Kenkel* who established that no one had altered the sliding door system after the manufacturer installed it, the Plaintiff here has failed to make a similar showing with respect to the allegedly defective air bag. Conclusory and vague statements in a brief, such as "Katz has testified that the car had been purchased recently" and that "the vehicle had undergone only routine maintenance through the dealership" constitute insufficient evidence under Fed. R. Civ. P. 56(c) and (e).

C.      *Is There A Causal Connection Between the Alleged Defect and Plaintiff's Injuries?*

Even if Plaintiff had presented sufficient evidence that a defect in the air bag existed at the time it left Defendant's control, Plaintiff would still be unable to survive Defendant's Motion for Summary Judgment because Plaintiff has failed to meet her burden on causation. Generally, in order to demonstrate a causal connection between the alleged defect and the injury suffered, a plaintiff must introduce evidence "that affords a reasonable basis for the conclusion that it is more likely than not that the alleged defects were the cause of the harm done." *Cavalier v. Werner Co.*, 976 F. Supp. 672, 675 (E.D. Mich. 1997). "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation. *Skinner v. Square D Co.*, 516 N.W.2d 475, 480 (Mich. 1994). The Michigan Supreme Court has highlighted the basic legal distinction between a reasonable inference and impermissible conjecture with regard to causal proof:

As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 [sic] or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 [sic] of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 [sic] theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.

*Kaminski v. Grand Trunk W. R.R. Co.*, 79 N.W.2d 899, 901-902 (Mich. 1956) (quoting *City of Bessemer v. Clowdus*, 74 So.2d 259, 263 (Ala. 1954)).

In this case, Plaintiff is relying on the "crashworthiness" or "second-collision" doctrine.[4]  Under this theory, a manufacturer is "responsible for injuries from the collision of the passenger with the interior part of the vehicle after the initial collision despite the fact that no defect or malfunction of the vehicle caused the initial collision." *Rutherford*, 231 N.W.2d at 414. Michigan courts have made clear that when this type of action is predicated on the theory that a defect caused the enhancement of the plaintiff's injuries—as is the case here—the plaintiff must prove the enhanced injuries "beyond speculation and conjecture." *Sumner v. General Motors Corp.*, 538 N.W.2d 112, 115 (Mich. Ct. App. 1995).  In other words, it must be "more probable than not that the alleged defect aggravated or enhanced the injuries resulting from the initial collision." *Id.*

---

[4] In *Rutherford v. Chrysler Motors Corp.*, 231 N.W.2d 413, 417 (Mich. Ct. App. 1975), the court adopted this doctrine, and explained the rationale behind it as follows:

[A] manufacturer of any automobile has a duty to so design and manufacture his product as to eliminate any unreasonable risk of foreseeable injury to its occupants as a result of a collision for which the manufacturer may not be responsible.  For the lack of reasonable care in the face of such duty, he may be answerable in a negligence action; and for the sale of a vehicle defective in such respect, he may be answerable for breach of implied warranty.

Therefore, recovery based on the crashworthiness theory requires a showing that the plaintiff's injuries are divisible. *Moisenko v. Volkswagen AG*, 10 F. Supp.2d 853, 855 (W.D. Mich. 1998). In this respect, the *Sumner* court noted,

> [w]e realize that a plaintiff's burden of offering evidence of what injuries would have resulted absent the alleged defect will be heavy in some instances and perhaps impossible in others . . . . [I]n those instances in which the plaintiff cannot offer any evidence as to what would have occurred but for the alleged defect, the plaintiff has not established the fact of enhancement at all.

538 N.W.2d at 115.

The Michigan Court of Appeals has stated, in general terms, how a plaintiff proceeding on a crashworthiness theory must prove enhanced injuries:

> The plaintiff must first prove the extent of injuries attributable to what the plaintiff alleges to be the defect in the car. Specifically, the plaintiff has the burden to prove the amount of injuries which are in excess of those which can reasonably be expected and those which are not attributable to the claimed defect. Any injuries not attributable to the claimed defect are not enhanced injuries. The plaintiff also has the burden to separately establish the extent of the injury that he would have sustained had there not been the claimed defect in the car.

*Elliott v. General Motors Corp.*, 1997 WL 33353580, at *1 (Mich. Ct. App. Mar. 28, 1997) (relying on *Sumner*, 538 N.W.2d at 698). However, beyond the above-quoted passage from the *Elliott* case, it appears that no Michigan case has specifically described exactly how a plaintiff proceeding on a crashworthiness theory must allocate his injuries in such a way. Thus, this Court must "make the best prediction . . . of what the [Michigan Supreme Court] would do if it were confronted with [this] question." *See, e.g., Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2005). In doing so, the Court will "consider 'all relevant data,' including jurisprudence from other jurisdictions." *Id.* (citations omitted) (quoting *Kingsley Ass'n., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th

Cir. 1995)).

Few courts have shed light on this issue, but the ones that have seem to expressly or impliedly require expert testimony to demonstrate enhancement of injuries. For example, in *St. Clair v. General Motors Corp.*, 10 F. Supp.2d 523, 533 (M.D. N.C. 1998) (applying North Carolina law), the plaintiff asserted negligence and breach of implied warranty claims after the air bag in his car failed to deploy, thereby causing the plaintiff to sustain enhanced injuries.[5] The court summarized the plaintiff's argument as follows:

> [p]laintiff does not contend that the accident was caused by the failure of the air bag system to deploy, but argues instead that the injuries to his right wrist and right knee would not have occurred absent the alleged defect in the air bag system. Plaintiff contends that the purpose of air bags is to keep the individual away from portions of the vehicle during an accident.

*Id*. In granting the defendant's motion for summary judgement, the court found that "Plaintiff's assertion [that the purpose of the air bags is to keep the individual away from portions of the vehicle during an accident was] based more upon speculation than upon evidence in the record" and that "Plaintiff offer[ed] no evidence to demonstrate that, with a deployed air bag, he would in fact have been unable to [suffer enhanced injuries to his wrist and knee]." *Id*.

---

[5] It should be noted that under both Michigan and North Carolina law, plaintiffs claiming an enhancement of their injuries in the motor vehicle context bear the same burden of proof on causation. Indeed, the *St. Clair* court stated,

> [w]ith respect to the application of the enhanced injury theory of liability to motor vehicle accidents, such plaintiffs bear the burden of proving the existence of an enhancement of injuries by demonstrating which aspect of the injuries was attributable to the accident alone and which aspect constituted an enhancement attributable to the defendant.

10 F. Supp.2d at 533. This is the same burden as Michigan plaintiffs face. *See Elliott*, 1997 WL 33353580, at *1.

Similarly, in *Tiner v. General Motors Corp.*, 909 F. Supp. 112, 114 (N.D. N.Y. 1995) (applying New York law), the plaintiff claimed enhanced injuries to her neck, back, chest, and knees, after driving her car into an unlit lamp pole. The plaintiff brought negligent manufacturing and installation claims, along with a defective design claim, against the defendant, arguing that she would not have sustained these injuries had the air bag and seat belt functioned properly. *Id.*[6] In support of this argument, plaintiff relied on the nature of her injuries, claiming that it was "self-evident that she would not have received [her] injuries had the air bag functioned properly." *Id.* at 119. The defendant, on the other hand, offered competent expert testimony that proper deployment of an air bag cannot prevent all personal injuries and, in fact, can cause injuries. *Id.* In granting the defendant's motion for summary judgment on this issue, the court noted that "[e]vidence of enhanced injuries 'will generally, perhaps even necessarily, be in the form of expert testimony.'" *Id.* at 116 (quoting *Caiazzo v. Volkswagenwerk*, 647 F.2d 241, 250 (2d Cir. 1981)).

Applying the above discussed law to the facts of this case, it is apparent that Plaintiff has not even come close to meeting her burden on causation. Under Michigan law, Plaintiff must show that it is "more likely than not that the alleged defects were the cause of the harm done." *See Cavalier*, 976 F. Supp. at 675. Specifically, under the crashworthiness doctrine, the burden is on Plaintiff to demonstrate that it is "more probable than not" that the failure of the air bag to deploy upon impact "aggravated or enhanced the injuries resulting from the initial collision." *See Sumner*, 538 N.W.2d at 115. According to the *Elliott* court's interpretation of *Sumner*, Plaintiff must make

_____

[6] The Court again notes that Michigan and New York law appear to place the same burden with respect to causation on plaintiffs proceeding on a crashworthiness theory since, as the *Tiner* court explained, "the second collision plaintiff has the burden of proving the extent of enhanced injuries attributable to the defect." 909 F. Supp. at 116 (citations omitted).

two separate showings. First, Plaintiff must prove the extent of the injuries which are attributable to the failure of the air bag to deploy (i.e., enhanced injuries). *See Elliott*, 1997 WL 33353580, at *1. Then, Plaintiff must separately establish the extent of the injuries that she would have sustained had the air bag deployed properly upon impact (i.e., injuries stemming from the accident alone). *See id*.

Plaintiff acknowledges that *Sumner* and *Elliott* are controlling, and contends that she has met her burden on causation under both *Sumner* and *Elliott* because she has successfully established enhancement of her injuries. (Pl.'s Response to Def.'s Mot. for Summ. J. at 9-10.) In support of this argument, Plaintiff relies on two pieces of evidence. First, Plaintiff argues that Katz's testimony that he saw Plaintiff's flesh on the dashboard after the accident demonstrates enhancement of injuries. (*Id*. at 9.) Apparently, Plaintiff is arguing that a reasonable jury might infer that, if the air bag had properly deployed, such skin tissue would not have been present on the dashboard. Second, Plaintiff states that her head injuries—the laceration of the forehead, the fractured jaw, and her closed-head injury—are all "consistent with a traumatic impact between Plaintiff's head and the dashboard equipment." (*Id*.) As such, Plaintiff contends that the proper deployment of the air bag would have prevented these injuries.

Like the plaintiff in the *St. Clair* case, Plaintiff here contends that the purpose of the air bag is to keep the individual away from portions of the vehicle during an accident. *See St. Clair*, 10 F. Supp.2d at 533. However, as the *St. Clair* court pointed out, such an argument is "based more upon speculation than upon evidence in the record." *See id*. Indeed, just as the plaintiff in the *St. Clair* case "offer[ed] no evidence to demonstrate that, with a deployed air bag, he would in fact have been unable to [suffer enhanced injuries to his wrist and knee]," so too is the case here. *See id*. That

is, Plaintiff offers no evidence that proper deployment of the air bag would have prevented the presence of skin tissue on the dashboard. Likewise, Plaintiff offers no evidence supporting her theory that she would not have suffered head injuries if the air bag had deployed properly. As one court has noted in discussing the burden of a plaintiff proceeding on a crashworthiness doctrine, whether head injuries were sustained as a result of the non-deployment of an air bag "involve[s] a technical and advanced understanding of biomechanics, medical causation and engineering principles far beyond the knowledge of the average layperson." *Walters v. General Motors Corp.*, 209 F. Supp.2d 481, 489 (W.D. Pa. 2002). Plaintiff here has not proffered the testimony of an expert to clarify such crucial causation questions as: would proper deployment of the air bag have prevented all—or just some—of Plaintiff's head injuries; would proper deployment of the air bag have completely eliminated Plaintiff's head injuries, or merely reduced their severity; and would proper deployment of the air bag have caused any injuries to Plaintiff? In light of a plaintiff's affirmative duty in Michigan under *Sumner* and *Elliott* to allocate the injuries as being attributable to the initial accident only or rather to defendant's negligence, Plaintiff here was responsible for answering these questions in order to survive summary judgment. Because Plaintiff has not even attempted to do so, she falls far short of establishing that Defendant is the cause of her head injuries.

Moreover, as the *Tiner* court made clear, a plaintiff cannot merely rely on the nature of her injuries, claiming that it is self-evident that she would not have received her injuries had the air bag functioned properly. *See* 909 F. Supp. at 119. Instead, "[e]vidence of enhanced injuries 'will generally, perhaps even necessarily, be in the form of expert testimony.'" *Id*. at 116. (quoting *Caiazzo*, 647 F.2d at 250). Plaintiff here, by arguing that her head injuries "are consistent with a traumatic impact between Plaintiff's head and the dashboard equipment," has done nothing more

than rely on the nature of her injuries to demonstrate that the failure of the air bag to properly deploy would have prevented her head injuries. This reasoning amounts to mere conjecture by Plaintiff, and is insufficient to satisfy her burden. This is especially true for two reasons. First, Plaintiff does not have the expertise to make such a statement on her own, and has not offered any expert testimony in support of it. Second, and more importantly, Defendant has proffered expert opinion that Plaintiff's head injuries resulted from the improper use of the lap-shoulder belt, and not from the alleged improper deployment of the passenger side air bag:

> Because of the manner in which [Plaintiff] was wearing the restraint system, her upper body was not restrained and she rotated toward the left front impact direction and downward striking her face on the corner console . . . . Had [Plaintiff] worn the lap-shoulder belt correctly, she would not have contacted the center console with her head.

(Def.'s Mot. for Summ. J. at ex. 11.) Plaintiff simply has not offered evidence that proper deployment of the air bag would have prevented her head injuries. Because such evidence is indisputably necessary to contradict the opinions of Defendant's experts, Plaintiff has failed to meet her burden to identify a triable issue of fact regarding causation.

Because Plaintiff has failed to demonstrate that the air bag was defective when it left the control of Defendant, and likewise has failed to demonstrate that the allegedly defective air bag was the cause of her head injuries, the Court is left with no choice but to grant Defendant's Motion for Summary Judgment. Accordingly,

IT IS ORDERED that Defendant's Motion for Partial Summary Judgment is denied as moot.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is granted.

s/Bernard a. Friedman
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated:  August 28, 2007
        Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

s/Carol Mullins
Case Manager to Chief Judge Friedman